# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LIBERTY NORTHWEST INSURANCE CORPORATION, Individually and as Subrogee of Extreme Electric, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and JOHN DOE CORPORATIONS 1-10,<br><br>Defendants. | Case No. 1:10-CV-102-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendant United States of America's Motion for Summary Judgment (Dkt. 28).

## I.  BACKGROUND

On February 27, 2008, Sean Perkins ("Perkins"), an employee of Extreme Electric, exited a work vehicle on Fox Hunt Loop on the Mountain Home (Idaho) Air Force Base, slipped on a patch of ice and fell, injuring his back.  (Compl., ¶¶ 11, 13, Dkt. 1.)  The vehicle was driven by a fellow Extreme Electric employee, Ryan Schaeffer.  (Perkins Dep., p. 32, Dkt. 28-8.)  Perkins later had surgery on his back in July 2009.  (Compl. at ¶ 14.)  Plaintiff Liberty Northwest Insurance Corporation ("Liberty") alleges that at the time of the accident, the road was completely covered with ice and there appeared to be no salt, sand or other maintenance to address the ice.  (*Id*. at ¶ 13.)

**MEMORANDUM DECISION AND ORDER - 1**

As a result of his injury, Perkins submitted a claim for worker's compensation benefits with Liberty, Extreme Electric's worker compensation insurer, which paid out benefits to Perkins in the amount of $74,436.32.  (*Id*. at ¶ 15.)

At the time of the accident, Parsons Evergreene ("Parsons") was the general contractor on a construction contract with the Army Corps of Engineers to construct 148 new military housing units on the Mountain Home Air Force Base.  Parsons subcontracted with Extreme Electric for the electrical work to be done in those housing units in March 2007.  (Derbridge Aff., Exs. A & B, Dkts. 28-4, 28-5.)

In this negligence and subrogation action, Liberty (as the subrogee of Extreme Electric and Perkins) alleges that the United States of America ("the Government") caused injury which resulted in the payment of worker compensation benefits.  Liberty alleges that the United States, through the Department of Defense, the Department of the Air Force, and Mountain Home Air Force Base, owned and operated property in Elmore County, specifically Fox Hunt Loop, and was responsible for the maintenance of the property, including removal of snow and ice.

## II.  DISCUSSION

### A.    The Summary Judgment Standard

One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

**MEMORANDUM DECISION AND ORDER - 2**

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings. *See id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id.* at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d

**MEMORANDUM DECISION AND ORDER - 3**

885, 889 (9th Cir. 2003).  Statements in a brief, unsupported by the record, cannot create an issue

of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995).

**B.      Statutory Employer Immunity Under I.C. § 72-223 Does Not Apply to the United
         States on these Facts.**

Generally, under the Idaho Worker's Compensation Act's (the "Act") exclusive remedy

rule, an injured employee is limited to recovery in worker's compensation and cannot sue in tort.

*Fuhriman v. State*, 153 P.3d 480, 484 (Idaho 2007).  An exception to that rule allows an injured

employee to seek damages for injuries caused by third parties, even if the employee is also

entitled to worker's compensation.  However, such third-party liability claims cannot be asserted

against so-called "statutory employers," who are either: (1) "those employers described in

section 72-216, Idaho Code, having under them contractors and subcontractors who have in fact

complied with the provisions of section 72-301, Idaho Code" or (2) "the owner or lessee of

premises, or other person who is virtually the proprietor or operator of the business there carried

on . . . " I.C. § 72-223.

To identify a statutory employer, the court first considers the statutory definition of

"employer" found at I.C. § 72-102(13)(a).  *Fuhriman*, 153 P.3d at 484 (internal citations

omitted).  There, "employer" is defined as "any person who has expressly or impliedly hired or

contracted the services of another."  I.C. § 72-102(13)(a).  This definition includes contractors

and subcontractors.  *Kolar v. Cassia County*, 127 P.3d 962, 968 (Idaho 2005).  An employer who

makes use of a contractor's or subcontractor's employees qualifies as a category one statutory

employer and is immune from suits in tort.  *Venters v. Sorrento Del., Inc.*, 108 P.3d 392, 396

(Idaho 2005).

The Government argues for statutory employer immunity on these facts.  First, the

**MEMORANDUM DECISION AND ORDER - 4**

Government contracted with Parsons, who acted as the general contractor on the military housing project, and Parsons then subcontracted with Extreme Electric.  Second, both the general contract and subcontract required worker's compensation insurance be provided in compliance with I.C. § 72-301.  Accordingly, the Government contends that it "expressly or impliedly hired and/or contracted the services of another" and therefore is a "category one" statutory employer, immune from third-party liability.

Liberty argues that the Government is not subject to the Idaho's Worker's Compensation Act because the Government does not fit within the Act's definition of "person," cannot be an "employer" under the Act and therefore cannot quality for third-party immunity.  *See* I.C. 72-102(24) (defining person as "the state or any political subdivision thereof, any individual, partnership, firm, association, trust, corporation . . .").  Liberty also argues that because the Government is not required to provide worker's compensation coverage under the Act and would not be liable for compensation if Extreme Electric had not complied with the requirements to obtain worker's compensation coverage, it is not entitled to immunity.  Lastly, Liberty contends that the Government cannot "bootstrap" into statutory employer status.

The Court will first address Liberty's argument that because the Government is not subject to Idaho's Worker's Compensation Act, it cannot qualify for statutory employer immunity.  Liberty initiated this action pursuant to the Federal Tort Claims Act (FTCA), which provides a limited waiver of sovereign immunity.  That limited waiver permits tort actions against the federal government, but the United States is liable only in the same manner and to the same extent as a private individual under like circumstances under the law of "the place where the act or omission occurred."  28 U.S.C. §§ 1346(b), 2674.  The Ninth Circuit, in analyzing an

**MEMORANDUM DECISION AND ORDER - 5**

action brought under California's worker's compensations laws, held that although the federal

government could never be exactly like a private actor, "a court's job in applying the standard is

to find the most reasonable analogy . . . [and] most courts have held . . . that the United States

should be entitled to the same immunity from suit enjoyed by a private employer covered by

state workmen's compensation laws." *LaBarge v. County of Mariposa*, 798 F.2d 364, 367 (9th

Cir. 1986). *See also Rivera v. U.S. Army Corps of Eng'rs*, 891 F.2d 567, 568 (5th Cir. 1990)

(finding statutory employer rule applies to the United States when it is sued under the FTCA).

Accordingly, the Court finds that statutory employer immunity under Idaho's Worker's

Compensation Act can apply to the United States.

The next issue is whether statutory employer immunity provided for in I.C. § 72-223

does in fact apply to the United States in this case.  When analyzing whether the United States is

a statutory employer, the Court must focus on the agency or department of the United States

which contracted for the work.  *See Struhs v. Protection Technologies, Inc.*, 992 P.2d 164, 169

(Idaho 1999) (quoting *Izard v. United States*, 946 F.2d 1492, 1495 (10th Cir. 1991)).  *See also

Rivera v. U.S. Army Corps of Eng'rs*, 891 F.2d 567, 568 (5th Cir. 1990); *Pendley v. United

States*, 856 F.2d 699, 702 (4th Cir. 1988).

The *Struhs* case is particularly instructive to the issue before the Court.  In *Struhs*, the

United States Department of Energy (DOE) contracted with EG&G Idaho, Inc. ("EG&G") to

operate certain Idaho National Engineering Laboratory (INEL) facilities.[1]  EG&G in turn

contracted with American Protective Services (APS) to provide security services at INEL.

Plaintiff Struhs worked for APS and while in the course of his employment, he was driving a

---

[1]  The "INEL" is now known as the Idaho National Laboratory, or "INL."

**MEMORANDUM DECISION AND ORDER - 6**

vehicle which was struck and injured by a negligently operated U.S. Army vehicle.  992 P.2d at 165-66.  Notably, the contract between the DOE and EG&G was an "allowable cost and fee contract," under which DOE paid actual costs for EG&G expenses, including payments for worker's compensation premiums.  *Id.*

The Idaho Supreme Court found that the DOE, "which indirectly employed Struhs through its contracts with EG&G and the subcontract with APS, was Struhs' statutory employer."  *Id*. at 169.  On the other hand, the court found that "the Army, which had no contractual or employment relationship with Struhs, was not Struhs' statutory employer . . . [and] [a]s with any third-party tortfeasor where the employer is not concurrently negligent, the Army was fully liable for any damages suffered by Struhs . . ."  *Id.*

In the Complaint, Liberty alleges that the Department of Defense, the Department of the Air Force, and Mountain Home Air Force Base are responsible for Perkins' injuries.  The record before the Court shows that it was the Army Corps of Engineers, through a general contractor and subcontractors, that contracted for the work and indirectly employed Perkins.  (Derbridge Aff., Exs. A, B.)[2]

The Government contends that, through these contractors, it was the statutory employer of Perkins and immune from third-party liability under I.C. § 72-223.  In making this argument, the Government is contending that it should be treated as one monolithic entity.  However, pursuant to *Struhs*, the Court is not to look at the United States Government as a whole but instead must examine the individual federal agencies involved in the matter.  The Government

---

[2]  The excerpted portions of the relevant contracts that have been placed in the record are silent as to whether the contracts are similar to the "allowable cost and fee contracts" involved in *Struhs*.

**MEMORANDUM DECISION AND ORDER - 7**

attempts to bring the Department of Defense, the Air Force and Mountain Home Air Force Base into the contracts between the Corps, Parsons and Extreme Electric.  However, there is no evidence before the Court that connects these entities to the general contractor and the subcontractor.  Rather, it appears that if there is a government entity entitled to claim statutory employer status, it would be the Army Corps of Engineers, not one or more of the Department of Defense entities.

At the hearing on this motion, the parties spent considerable time addressing the case of *Robison v. Bateman-Hall*, 76 P.3d 951 (Idaho 2003).  In that case, the supermarket company Fred Meyer contracted with a general contractor, Bateman-Hall, to construct a building on a site owned by Fred Meyer.  *Id.*, at 952.  Bateman-Hall then contracted with Robison Roofing to perform the roofing work on the project.  An employee of Robison Roofing was injured in the course of his work, and brought a third-party claim against Fred Meyer.  *Id.* at 952-53.  The Idaho Supreme Court held that Fred Meyer was *not* a statutory employer under category two of the statute, which exempts from liability "the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed."  The significant fact, according to the Idaho Supreme Court, was that Fred Meyer  "was not in the business of construction or roof installation."  *Id*. at 212-13 (discussing that to be a statutory employer, the work being carried out by the independent contractor on the owner or proprietor's premises must have been the type that could have been carried out by the employees of the owner or proprietor in the course of its usual trade or business) (internal quotations omitted).  On the other hand, the court went on to find that

**MEMORANDUM DECISION AND ORDER - 8**

Bateman-Hall, the general contractor, was immune from third-party tort liability under category one of the statute.

Arguably, Fred Meyer in *Robison* was in much the same position as the DOE in *Struhs*. Both indirectly employed the injured person through general and subcontracts. However, in *Struhs* the court held that the DOE *was* a statutory employer; in *Robison*, the same court held that Fred Meyer *was not* a statutory employer. Notably, Fred Meyer's statutory employer status was only analyzed under category two of the statute. The Court has reviewed the underlying briefs filed with the Idaho Supreme Court in the *Robison* case and concludes from that review that the issue of whether Fred Meyer was immune from third-party liability *under category one* was never raised. In this case, the Government made clear at the hearing that it was not seeking statutory employer status under category two. Accordingly, the holding in *Robison* is inapposite to the facts before the Court. Put simply, the Idaho Supreme Court did not consider the same issue in *Robison* as is before this Court in the instant case. Instead, as discussed above, this case is analogous to *Struhs* and in line with that authority, the Court finds that the Government is not a category one statutory employer.[3]

**C.     Idaho Premises Liability Law Does Not Preclude Plaintiff's Claim against the United States on the Present Record.**

Under the FTCA, the United States cannot be held liable on any state law imposing strict liability. *See Laird v. Nelms*, 406 U.S. 797, 804 (1972). Additionally, the United States may

---

[3]  Importantly, the distinction here pertains to the negligence Plaintiff has alleged against the particular Department of Defense entities. If the negligence claim was made against the Army Corps of Engineers, the result would be different. And, equally importantly, this decision does not presume that such negligence has been proved – that burden remains to be met by Plaintiff.

**MEMORANDUM DECISION AND ORDER - 9**

only be held liable if its own employees acted negligently and cannot be held liable under the

theory of vicarious liability. *See Logue v. United States*, 412 U.S. 521, 532-33 (1973); 28 U.S.C.

§ 1346(b).

The Government contends that Idaho's premises liability law creates strict liability and

therefore the Government cannot be found liable for such claims. The Government also argues

that Parsons, the general contractor acting independently, was the only possibly negligent actor

and the Government cannot be held liable for its acts.

It is correct that under the FTCA, the United States cannot be held liable under a strict

liability theory. *See Laird v. Nelms*, 406 U.S. 797, 798-99 (1972). However, under Idaho tort

law, employees and workmen, or those who confer a tangible benefit to the landowner, are

treated as invitees. *See Keller v. Holiday Inns, Inc.*, 671 P.2d 1112, 1116 (Idaho Ct. App. 1983).

A landowner owes a common law duty of care to an invitee to keep the premises in reasonably

safe condition, or to warn of hidden or concealed dangers. *Holzheimer v. Johannesen*, 871 P.2d

814, 817 (Idaho 1994). However, this is not strict liability, *i.e.*, if an invitee is injured if the

premises are in reasonably safe condition, or if warned of hidden or concealed dangers, the

landowner is not liable for such injuries. Accordingly, the claims against the Government are

not barred on those grounds.

The Government also correctly asserts that it cannot be liable for the negligent acts of the

independent contractor, Parsons. *See United States v. Orleans*, 425 U.S. 807, 813-14 (1976).

This is one of the exceptions to the waiver of sovereign immunity. *Id*. *See Logue v. United

States*, 412 U.S. 521, 532-33 (1973); 28 U.S.C. § 1346(b). However, although there is no

dispute that Parsons was an independent contractor, it is not clear from the record whether

**MEMORANDUM DECISION AND ORDER - 10**

Parsons had a duty to clear the roads and sidewalks of snow and ice as alleged by the Government.  The only evidence in support of this contention is the deposition of Brannon Brown, an Extreme Electric employee, who, when asked who was responsible for the ice removal on the road or work site, responded: "I think it was the contractor, the general contractor, Parsons."  (Brown Dep., at p. 40, Dkt. 28-7.)  While probative, Mr. Brown's statement is not dispositive for showing that it was the negligent act of an independent contractor that caused Mr. Perkins' fall and subsequent injury.  The inferences that can reasonably be drawn from other evidence in the record, which must be construed against the Government, create an issue of fact upon this question, particularly where nothing has been submitted that would establish that such a duty had been transferred under common law or by contract during the construction process from the landowner, where it would ordinarily lie, to the general contractor.  Accordingly, the Government will not be granted summary judgment on this defense, although additional proof at trial might very well support such a defense.

### D.       Whether the Employer was Negligent is a Question of Fact.

The Government appears to argue that whatever negligence there might be is attributable only to Extreme Electric, and thus is a bar to the Government being held liable, entitling the Government to summary judgment.  The Government contends that Extreme Electric was negligent because Perkins' supervisor at Extreme Electric, who was the driver of the van, parked the van facing the wrong way on the street so that the passengers had to exit into the middle of the street, rather than onto a curb or sidewalk.  (*See* Perkins Dep. at 23, Dkt. 28-8.)

Under Idaho law, where both an employer and third party are deemed negligent, the employee's damages are apportioned between the employer and third party.  *See Runcorn v.*

**MEMORANDUM DECISION AND ORDER - 11**

*Shearer Lumber Prods.*, 690 P.2d 324, 331 (Idaho 1984).   It appears to be an open question

under Idaho law whether a third-party may be liable for less than its own negligence percentage

share of the damages if the amount of worker's compensation benefits paid out is greater than

the amount the employer's assessed negligence might yield as a percentage of any total damages

(in an employee's lawsuit against a third-party).[4]   Regardless, on the present record the issue of

Extreme Electric's alleged negligence compared to the Government's alleged negligence, and

any resulting implications as to the Government's potential liability, are questions of fact that

preclude summary judgment on this particular defense.

### III.  ORDER

**IT IS HEREBY ORDERED** that Defendant United States of America's Motion for

Summary Judgment (Dkt. 28) is DENIED.

DATED:  **November 30, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[4] *Runcorn* stands for the proposition that an injured employee should not obtain a double
recovery through a third-party tort action, which led to the holding in that case concerning the
offset (in the amount of worker's compensation payments made to the employee) to which a
third-party defendant might be entitled in the event of a damage award against that defendant.
Notably, however, *Runcorn* involved joint and several liability rather than the comparative
negligence doctrine that exists today, which leaves unanswered how the statutory policy applied
by the court in *Runcorn* would be utilized in a case involving a special verdict assigning
comparative negligence among multiple tortfeasors.

**MEMORANDUM DECISION AND ORDER - 12**